**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **ROYAL ALLIANCE ASSOCIATES, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) Civil Action # 1:08cv449 (LMB/JFA) |
| | ) |
| **BRANCH AVENUE PLAZA, L.P.,** | ) |
| | ) |
| **Defendant.** | ) |

<u>**DEFENDANT'S MEMORANDUM OF LAW AND RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**</u>

COMES NOW Defendant, Branch Avenue Plaza, L.P., and files this Memorandum of

Law and Response in Opposition to Plaintiff, Royal Alliance's, Motion for a Temporary

Injunction as follows:

**I. Introduction.**

As set out more fully in the Statement of Claim (Exhibit B to Sawicki's affidavit attached

to the subject Motion) which is incorporated herein, Branch Avenue's arbitration claim against

Royal Alliance is based upon Royal Alliance's acquisition of United Securities Alliance, a

former FINRA member.   Branch Avenue was a customer of United Securities Alliance and its

representative (Ackerman) regarding United Securities Alliance's sale to Branch Avenue of a

security in the form of an LLC interest in a piece of commercial real estate.  Branch Avenue is a

closely held limited partnership owned by a retired married couple, William and Glaucia Allen.

United Securities Alliance's and Mr. Ackerman's misrepresentations and omissions in regard to

the sale have resulted in the loss of the entire investment and caused Branch Avenue to suffer over $1,800,000 in losses and damages. These losses have severely impacted the Allens' income they had counted on in their retirement. Branch Avenue's claims against Royal Alliance are based upon its status as the successor in interest to United Securities Alliance.

For the reasons set out below, Plaintiff Royal Alliance (a FINRA member) is bound to arbitrate this dispute with Branch Avenue as required by FINRA Rules. Because the FINRA Rules clearly require the arbitration of this matter, the Court should consolidate this Preliminary Injunction hearing on this issue with the trial on the merits on this issue (Declaratory Judgment) pursuant to FRCP 65(a)(2) and deny the Preliminary Injunction, Order this matter to FINRA arbitration, and issue a final Order dismissing or staying the Declaratory Judgment relief requested by Royal Alliance.

## II. Facts.

FINRA (the Financial Regulatory Authority) is a self-regulatory organization which oversees the securities industry. FINRA is the current name for the organization which used to be known as the NASD. These two names may be used interchangeably herein. As a registered Broker-Dealer, Royal Alliance was and is a member of the NASD and FINRA.

Defendant Branch Avenue filed a FINRA arbitration against United Securities Alliance, Royal Alliance Associates, and Gary Ackerman on February 22, 2008. Branch Avenue alleged therein that Royal Alliance was the successor in interest to United Securities Alliance.

At the present juncture, Branch Avenue has not had the opportunity to engage in discovery with regard to the transactions between Royal Alliance and United Securities Alliance, and thus cannot respond fully to all of the factual allegations being made by Royal Alliance in its

Motion and Tambaro affidavit.  As set out below, however, Royal Alliance is bound to arbitrate this matter pursuant to FINRA Rules, regardless of the facts alleged in the Tambaro affidavit.

Branch Avenue will, however, present the facts known to it at the present time with regard to the relationship between Royal Alliance and United Securities Alliance. As follows are the allegations contained in the Statement of Claim in Arbitration relating to Royal Alliance:

1.  USA was acquired by Royal Alliance in approximately February/March, 2007.

2.  A news article in InvestmentNews, dated March 19, 2007 (attached Exhibit 4), details the "acquisition" of USA by Royal Alliance.  The news article states:  "…the co-presidents of United Securities Alliance, will continue to be in charge of the firm, **a de facto branch office of Royal Alliance**.  They will recruit to the Royal Alliance platform, using its technology and product lines…"  (emphasis added).

3.  Another related news article in InvestmentNews, dated April 9, 2007 (attached Exhibit 5) again discussed the "acquisition," and confirmed that USA's 117 registered representatives, at the time of the acquisition, "joined Royal Alliance."

4.  Caselaw in a majority of states, including Virginia and Colorado, holds that a corporation that purchases the assets of another company becomes liable for the debts of the selling corporation in any of the following four situations:

"… it must appear that (a) there be an agreement to assume such debt; (b) the circumstances surrounding the transaction must warrant a finding that there was a consolidation of the two corporations; or (c) that the purchasing corporation was a mere continuation of the selling corporation; or (d) that the transaction was fraudulent in fact."

Peoples Nat. Bank v. Morris, 152 Va. 814, 819 (1929); Crawford Harbor Assoc. v. Blake Const. Co., Inc., 661 F.Supp. 880 (E.D. Va. 1987); Ruiz v. ExCello Corp., 653 P.2d 415 (Colo. App. 1982).

5.  Related to the "consolidation" element in (b) above, is the concept of a "de facto merger."  The tests used to determine if a "de facto merger" has occurred thereby making the acquiring firm liable are as follows:

"(1) continuity of management, personnel, physical location, assets, and general business operations (i.e., continuity of enterprise); (2) continuity of ownership; (3) prompt cessation of the seller corporation's operations; and (4) assumption by

the purchaser of obligations ordinarily necessary for the uninterrupted continuation of normal business operations of the seller."

Crawford Harbor Assoc. v. Blake Const. Co., Inc., 661 F.Supp. 880, 884 (E.D. Va. 1987).

6.  The facts known at this time regarding the acquisition by Royal Alliance mandate a finding that Royal Alliance would be liable for USA's debts as the successor in interest.  USA was "acquired" by Royal Alliance, all of USA's remaining registered representatives (and presumably its customers) transferred their registrations to Royal Alliance, and the co-Presidents of USA will continue to run USA as a de facto branch of Royal Alliance.  These facts clearly show a "continuation" and a merger, or a "de facto merger."  There is continuity of management, personnel, physical location, and business operations, as well as cessation of the selling corporations' operations (it hereafter is a branch office of Royal Alliance).

7.  NASD/FINRA considers unfair prejudice to customers in arbitrations through the sale or acquisition of a broker-dealer to be a violation of Rule 2110, which requires NASD/FINRA members to "observe high standards of commercial honor and just and equitable principles of trade."  Specifically, NASD Notice to Members 04-10 describes how NASD/FINRA, when reviewing and approving new and continuing membership applications, shall consider transfers between firms of over 25% of assets, and the affect of such transfers on pending arbitration claims of the seller.  These considerations are set out in NASD/FINRA Rule 1014 and 1017.

8.  With respect to potential violations of Rule 2110 through the transfer of assets which results in unfair prejudice to customers, NASD Notice to Member 04-10 states at page 95:

> "Rule 2110 applies to efforts by a firm and its owners to unfairly prejudice customers seeking relief in arbitration proceedings.  This protective principle also applies in the membership process:  NASD has authority to restrict or deny an application if the transaction would have the effect of unfairly prejudicing customer claims.  The amendments to Rule 1014 have the effect of making it explicit that NASD consider the following in reviewing new and continuing membership applications:  pending arbitration claims and civil actions against the applicant and its associated persons, as well as unpaid arbitration awards and other adjudicated customer awards against the applicant or other persons that may have significant control or influence over the applicant, including its control persons, principals, registered representatives…"

9.  NASD/FINRA's position set out in Notice to Members 04-10 supports Claimant's position that Respondent USA could not sell or transfer its assets to another NASD/FINRA member without ensuring that any arbitration award entered in this case

against USA will be paid.  A finding of joint and several liability with USA and Royal Alliance therefore will satisfy this concern, and keep customers such as Branch Ave. from being prejudiced by the sale/transfer/acquisition.

10.  Based on the above, the agreement regarding the acquisition should have provided for payment and liability of claims of USA customers so as not to unfairly prejudice customers.

In addition to the facts alleged above, the documents produced by Royal Alliance attached to its Complaint and Motion reveal the following additional facts in support of a finding that a consolidation, continuation, and de facto merger of the two corporations occurred:

a.  Exhibit A to Mr. Sawicki's affidavit is the Form ADV for United Securities Alliance on file with the SEC.  Section 1.K. requires United Securities Alliance to disclose locations where its books and records are kept other than its main office.  At pages D-27 – D-31 the Form ADV lists twelve Royal Alliance offices where United Securities Alliance records are kept.

b.  Section 7.A. of the Form ADV (page D-32 – D-33) requires that "affiliated" Investment Advisors be listed by United Securities Alliance.  On page D-33 Royal Alliance Associates is listed as an "affiliate" of United Securities Alliance.

The fact that these two entities share office locations and are currently "affiliates" is persuasive evidence that the transaction between them constituted a consolidation, continuation, and de facto merger.

**III.  Argument.**

**1.  Standard for Preliminary Injunction.**

As stated by the Fourth Circuit in <u>In re Microsoft Corp. Antitrust Litigation</u>, 333 F.3d 517, 526 (4th Cir. 2003):  "preliminary injunctions are extraordinary interlocutory remedies that are granted in limited circumstances and then only sparingly. The limited circumstances amount

-5-

to the demonstration of a need to protect the status quo and to prevent irreparable harm during the pendency of the litigation to preserve the court's ability in the end to render a meaningful judgment on the merits."

The discretion of the trial court is "informed by" four balancing factors:

> (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the injunction is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest.

Microsoft at 526.

For the reasons set out below, Royal Alliance has failed to carry its burden of demonstrating it is entitled to a temporary injunction under the four factors.

## 2. The Arbitrators Must Decide the Issue of Arbitrability.

Contrary to the argument made by Royal Alliance in its Motion, the issue of arbitrability of the dispute between the parties is one to be decided by the arbitrators, not this court. The question of who decides the arbitrability issue in the context of an NASD arbitration was one addressed by the U.S. Supreme Court in Howsam v. Dean Witter Reynolds, Inc., 537 U. S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002).

Although the Court in Howsam addressed this issue in relation to the NASD's six year eligibility rule which it found to be a "procedural rule," and not one of arbitrability, the Court did discuss an exception to the general rule that courts decide questions of arbitrability. Specifically, the Court stated: "The question whether the parties have submitted a particular dispute to arbitration, i. e., the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.' Howsam at 537 U. S. 83 (citing AT& T

<u>Technologies, Inc. v. Communications Workers,</u> 475 U. S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)).

The arbitration agreement in the case at bar is based upon Royal Alliance's membership in FINRA/NASD which requires arbitration in certain situations to be discussed more fully below. The Fourth Circuit in <u>Washington Square Securities, Inc. v. Aune,</u> 385 F.3d 432 (4th Cir. 2004) found that "[t]he NASD Code constitutes an "agreement in writing" under the Federal Arbitration Act, 9 U.S.C. § 2, which binds [the member]…" Accordingly, if the FINRA Code "clearly and unmistakably" provides that the FINRA arbitrators decide issues of arbitrability, then Royal Alliance is bound by the arbitrators' decision as a member, and it cannot ask this Court to find otherwise.

Looking at the FINRA Code/Rules, FINRA Rule 12413 (attached Exhibit A) states: "The panel has the authority to interpret and determine the applicability of **all provisions** under the Code. Such interpretations are final and binding upon the parties." [emphasis added]. Royal Alliance has therefore agreed, as a member of FINRA, to give an arbitration panel the "authority" to interpret and determine the applicability of the arbitration Rule (12200 cited below) relied on by Branch Avenue. This grant of authority is clear and unmistakable, and as such, the FINRA arbitrators, and not this Court, should decide the issue of arbitrability.

**3. Four Factors to be Considered for Preliminary Injunction Relief.**

As set out in section "c" below, because Royal Alliance is required to arbitrate the dispute under FINRA Rules, Royal Alliance cannot succeed on the merits and the case should immediately be ordered to arbitration. However, should the Court wish to engage in the standard Preliminary Injunction analysis, Branch Avenue will respond to each of the four standard

factors.

### a. Likelihood of Irreparable Harm if Injunctive Relief is Denied.

Royal Alliance alleges that it will suffer "the loss of procedural and appellate rights" as well as "significant additional expenses" should the Preliminary Injunction not be granted. Branch Avenue submits that Royal Alliance has failed to demonstrate that these alleged harms justify the "extraordinary remedy" of a preliminary injunction.

Regarding costs, arbitration is supposed to be a less expensive alternative to litigation which is one of the ostensible reasons FINRA firms such as Royal Alliance require arbitration clauses in all customer new account forms. Yet, Royal Alliance has chosen to attempt to litigate the issue of arbitrability and the issue of whether or not they are a successor in interest. If Royal Alliance was truly concerned about costs and attorney's fees, they could have chosen to have these matters resolved in the forum set up by their own industry.

Regarding loss of procedural and appellate rights, Royal Alliance has not sufficiently proven that they would suffer such a damage by the concurrent proceeding of the arbitration where they could certainly raise their objections to the arbitration with the arbitrators.

### b. Likelihood of Harm to Defendant if Injunction is Granted.

If the preliminary injunction is granted, Branch Avenue will go from arbitrating its claims in one arbitration against the three involved parties, to potentially arbitrating two different cases and litigating one case, thereby tripling its costs and time expended. If the preliminary injunction is granted, Branch Avenue will continue with its arbitration claims against United Securities and Ackerman while litigating its claims against Royal Alliance in this Court. Then, if Branch Avenue ultimately prevails in Court in its request to require arbitration, Branch

Avenue will most likely have to arbitrate its claims against Royal Alliance in separate proceedings, and possibly have to re-arbitrate the issues of the underlying liability of United Securities and Ackerman if Royal Alliance claims it cannot be bound by the other arbitration in which it did not participate.  These harms outweigh the alleged harms to be suffered by Royal Alliance and are persuasive arguments against the granting of injunctive relief.

### c.  Plaintiff Royal Alliance Will Not Succeed On the Merits.

### 1.  Royal Alliance is required to arbitrate this dispute.

The new FINRA Arbitration Rules which went into effect on April 16, 2007 clearly mandate that Royal Alliance is required to arbitrate the issues raised in the Statement of Claim in arbitration.  Royal Alliance in its Complaint, and the cases relied upon by Royal Alliance in its Motion for a Preliminary Injunction, rely upon the now obsolete and superseded old NASD/FINRA Arbitration Rules (specifically NASD Rule 10301).

As a FINRA member, Royal Alliance is bound by FINRA Rules and Claimant is entitled to enforce those Rules against Royal Alliance.  Royal Alliance concedes in its Tambaro affidavit that it is a member of FINRA.

As set out above, the Fourth Circuit in <u>Washington Square Securities, Inc. v. Aune</u>, 385 F.3d 432 (4th Cir. 2004) found that "[t]he NASD Code constitutes an "agreement in writing" under the Federal Arbitration Act, 9 U.S.C. § 2, which binds [the member]…"

The Federal Arbitration Act, 9 U.S.C. § 3, provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action

until such arbitration has been had in accordance with the terms of the agreement…

FINRA Rule 12200 (attached as Exhibit B) specifically provides that:

Parties must arbitrate a dispute under the Code if:
- Arbitration under the Code is either:
  1. Required by a written agreement, or
  2. Requested by the customer;
- The dispute is between a customer and a member or associated person of a member; and
- The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

A "customer" is very broadly defined by FINRA Rule 12100(i) (attached as Exhibit C) as: "A customer shall not include a broker or dealer."

In the present situation, the customer (Claimant Branch Avenue) has met the "request" for arbitration requirement by filing the arbitration. The second prong of the Rule is met because the arbitration is between a member (Royal Alliance) and a customer. The third prong of the Rule is also met as the dispute with Royal Alliance is in connection with its business activities (its alleged acquisition of United Securities Alliance and status therefore as a successor in interest). Accordingly, Royal Alliance is required as a member of FINRA to arbitrate this dispute and its attempt to stay the arbitration should be denied.

The Court in Aune makes very clear that if the NASD/FINRA Rules are open to **any interpretation** which would require arbitration of the dispute, then the Court must send the dispute to arbitration. The Court stated that there exists a "presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that

covers the asserted dispute.  Doubts should be resolved in favor of coverage." Id. at 436 citing AT & T Technologies, Inc., supra at 650.

The Aune Court found the NASD Rule 10301 to be ambiguous in regard to its "between a customer and a member" language, and its requirement for "arising in connection with the business of such a member."  Aune at 436-437.  Accordingly, it ruled in favor of arbitration in the situation where the customer had dealt with an associated person of a member, even though the member (Washington Square) argued that the customer had not dealt with it.

The new FINRA Rule 12200 includes similar language to that found to be ambiguous by Aune, and also similarly does not include the word "of" with regard to the "customer" and the "member."  The various District Court cases cited by Royal Alliance for the proposition that the customer must be a customer "of" the member rely upon an 11th Circuit case, Wheat, First Securities, Inc. v. Green, 993 F.2d 814 (1993).  The problem with the analysis in Wheat, First and its progeny is, however, that in Wheat, First both parties agreed to the existence of this "customer of" requirement, despite its absence in the actual rule.  Specifically, the Court in Wheat First stated:

> The parties agree that these sections contain two prerequisites before an NASD member can be compelled to arbitrate.  First, a complaining party must be a "customer" of the NASD member…

Wheat, First at 820.

Branch Avenue therefore submits that the analysis in Wheat, First and the cases that rely upon Wheat, First is flawed due to the fact that their analysis starts with the presumption (agreed to by the parties in Wheat, First) that the NASD Rule at the time contained a word ("of") which was not present in the Rule.  The current Rule does not contain this requirement, and simply and

broadly only requires that Branch Avenue be "a customer," which it is, and that Royal Alliance be "a member," which it is.

The Fourth Circuit in <u>Aune</u> has found similar language to be ambiguous both in regard to the customer and member requirement, and the requirement that the "arising in connection with the business of such member" requirement. Branch Avenue submits that the Court should rely upon the plain language of the Rule and the definition of "customer" which does not require that Branch Avenue be a "customer of" Royal Alliance. At the very least, this interpretation is one among several potential interpretations under the Rule, and as such, as required by <u>Aune</u>, this Court must resolve any such ambiguities in favor of arbitration.

Alternatively, even if the Court applies the "customer of" requirement, Royal Alliance has not disputed that Branch Avenue was a "customer of" United Securities and that the arbitration claims against Royal Alliance are based upon allegations that it is the successor in interest to United Securities. The same analysis as in <u>Aune</u> would therefore apply to this case where the Court found that the customer was a customer of an Associated Person, and the member was therefore required to arbitrate because of the claims connecting the two – the member's failure to supervise the Associated Person.

Accordingly, because the legal merits of both the request for a Temporary Injunction and the underlying Declaratory Judgment action both require arbitration of this dispute, this Court should, pursuant to FRCP 65(a), consolidate this hearing with the trial on the merits on the issue of arbitrability under the FINRA Rules, and Order the parties to arbitration and dismiss this case.

**2. Royal Alliance is the successor in interest to United Securities.**

As set out above, Branch Avenue has not been provided the opportunity to engage

in discovery to delve into the details of the transaction between Royal Alliance and United Securities wherein all of United Securities brokerage representatives and customers were transferred to Royal Alliance.  Under FINRA Rules, the issue of successor in interest liability must be arbitrated, not litigated in this forum.

However, should the court wish to address this factual issue at this time, Branch Avenue references and incorporates the facts alleged above and in the Statement of Claim in arbitration for support of its position.  Branch Avenue submits that those facts support its position that it will prevail on the merits on this claim, should the court wish to address this issue.  Furthermore, as the successor in interest to United Securities, Branch Avenue is bound to arbitrate the dispute just as United Securities is.

### d.  The Public Interest is Against Injunctive Relief.

Royal Alliance is a member of a self-regulatory organization (FINRA) which requires all of its customers in their new account forms (including the new account form Branch Avenue signed with United Securities) to arbitrate disputes with members.  The industry maintains that its arbitration system is a fair and cost-effective way to resolve disputes, and industry member like Royal Alliance benefit from this system in the form of reduced litigation costs and less public scrutiny of disputes.

However, Royal Alliance is now seeking to have its cake and eat it too.  It can require customers who sign new account forms to arbitrate, but when it feels it can gain a better result by avoiding arbitration, it seeks to do so in this case.  By Royal Alliance seeking a Temporary Injunction in this matter, Branch Avenue, a public customer, may be forced to litigate this matter three times rather than once:  One arbitration against United Securities and Ackerman, one court

case against Royal Alliance, and one arbitration against Royal Alliance if Branch Avenue is successful in the court case. Such an outcome is not in the public interest, and not allowed or contemplated by the FINRA Rules which bind Royal Alliance.

## IV. Conclusion.

Royal Alliance, a member of FINRA, is bound by FINRA Rule 12200 which requires arbitration of the present dispute between a "customer" and a "member." Because the requirements for arbitration have been met under Rule 12200, the Court should deny the request for injunctive relief, consolidate the Declaratory Judgment action at this hearing on this issue pursuant to FRCP 65(a)(2), Order the parties to FINRA arbitration, and dismiss this case, or alternatively stay the case pending the outcome of the arbitration.

WHEREFORE, for the foregoing reasons, Defendant Branch Avenue asks that the Plaintiff's Motion for a Temporary Injunction be denied, that the Court consolidate the Declaratory Judgment action at this hearing on the issue of arbitrability pursuant to FRCP 65(a)(2), Order the parties to FINRA arbitration, dismiss this case with prejudice (or alternatively stay the case pending the outcome of the arbitration), and award such other and further relief as is just and equitable.

BRANCH AVENUE PLAZA, L.P.,
By Counsel,

GRECO & GRECO, P.C.
1300 Old Chain Bridge Road
McLean, Virginia  22101
Telephone (703) 821-2777
Facsimile (703) 893-9377


By: ____/s/_____
      W. Scott Greco (VSB # 37341)
      wsgreco@grecogrecolaw.com
      Frederick D. Greco (VSB #4812)
      Counsel for Defendant Branch Avenue Plaza, L.P.


**Certificate of Service**

I hereby certify that on the 13th day of June, 2008 I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Marianne Roach Casserly, Esquire
Counsel for Plaintiff
ALSTON & BIRD
950 F Street NW
Washington, DC 20005

                ____/s/_____
                W. Scott Greco (VSB # 37341)
                Counsel for Defendant Branch Avenue Plaza
                GRECO & GRECO, P.C.
                1300 Old Chain Bridge Road
                McLean, Virginia  22101
                Telephone (703) 821-2777
                Facsimile (703) 893-9377
                wsgreco@grecogrecolaw.com

Location: NASD > Manual > Rules of the Association > Procedural Rules (8000–14000) > 12000. NASD Code of Arbitration Procedure for Customer Disputes > Part IV Appointment, Disqualification, and Authority of Arbitrators > 12413. Jurisdiction of Panel and Authority to Interpret the Code

◁◁ **Previous**                                                                                                    **Next**

## 12413. Jurisdiction of Panel and Authority to Interpret the Code

> 📄 **Notices**
> (1 link)

The Customer Code will apply to claims filed on or after April 16, 2007. In addition, the list selection provisions of the Customer Code will apply to previously filed claims in which a list of arbitrators must be generated after April 16, 2007; in these cases, however, the claim will continue to be governed by the remaining provisions of the old Code unless all parties agree to proceed under the new Code.

The panel has the authority to interpret and determine the applicability of all provisions under the Code. Such interpretations are final and binding upon the parties.

Adopted by SR-NASD-2003-158 eff. April 16, 2007.

**Selected Notices:** 07-07

◁◁ **Previous**                                                                                                    **Next**

©2008 FINRA. All rights reserved.

DEFENDANT'S
EXHIBIT

A

Blumberg No. 5114

**Location:** NASD > Manual > Rules of the Association > Procedural Rules (8000–14000) > 12000. NASD Code of Arbitration Procedure for Customer Disputes > Part II General Arbitration Rules > 12200. Arbitration Under an Arbitration Agreement or the Rules of NASD

‹‹ **Previous**                                                                                    **Next**

## 12200. Arbitration Under an Arbitration Agreement or the Rules of NASD



The Customer Code will apply to claims filed on or after April 16, 2007. In addition, the list selection provisions of the Customer Code will apply to previously filed claims in which a list of arbitrators must be generated after April 16, 2007; in these cases, however, the claim will continue to be governed by the remaining provisions of the old Code unless all parties agree to proceed under the new Code.

Parties must arbitrate a dispute under the Code if:

- Arbitration under the Code is either:

   (1) Required by a written agreement, or

   (2) Requested by the customer;

- The dispute is between a customer and a member or associated person of a member; and

- The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

Adopted by SR-NASD-2003-158 eff. April 16, 2007.

**Selected Notices:** 07-07

‹‹ **Previous**                                                                                    **Next**

©2008 FINRA. All rights reserved.



Location: NASD > Manual > Rules of the Association > Procedural Rules (8000–14000) > 12000. NASD Code of Arbitration Procedure for Customer Disputes > Part I Interpretive Material, Definitions, Organization and Authority > 12100. Definitions

<< Previous                                                                                                                        Next

## 12100. Definitions



The Customer Code will apply to claims filed on or after April 16, 2007. In addition, the list selection provisions of the Customer Code will apply to previously filed claims in which a list of arbitrators must be generated after April 16, 2007; in these cases, however, the claim will continue to be governed by the remaining provisions of the old Code unless all parties agree to proceed under the new Code.

Unless otherwise defined in the Code, terms used in the Rules and interpretive material, if defined in the NASD By-Laws, shall have the meaning as defined in the NASD By-Laws.

**(a) Associated Person**

The term "associated person" or "associated person of a member" means a person associated with a member, as that term is defined in paragraph (r).

**(b) Award**

An award is a document stating the disposition of a case.

**(c) Board**

The term "Board" means the Board of Directors of NASD Dispute Resolution, Inc.

**(d) Claim**

The term "claim" means an allegation or request for relief.

**(e) Claimant**

The term "claimant" means a party that files the statement of claim that initiates an arbitration under Rule 12302.

**(f) Code**

The term "Code" means the Code of Arbitration Procedure for Customer Disputes. For disputes involving only industry parties, see the NASD Code of Arbitration Procedure for Industry Disputes.

**(g) Counterclaim**

The term "counterclaim" means a claim asserted against a claimant by a respondent.

**(h) Cross Claim**

The term "cross claim" means a claim asserted by a respondent against another already-named respondent.

**(i) Customer**

A customer shall not include a broker or dealer.

**(j) Day**

Except as otherwise provided, the term "day" means calendar day. If a deadline specified in the Code falls on a Saturday, Sunday or any NASD holiday, the deadline is extended until the next business day.

**(k) Director**

The term "Director" means the Director of NASD Dispute Resolution. Unless the Code provides that the Director may not delegate a specific function, the term includes NASD staff to whom the Director has delegated authority.

**(l) Dispute**

The term "dispute" means a dispute, claim or controversy. A dispute may consist of one or more claims.

**(m) Hearing**

The term "hearing" means the hearing on the merits of an arbitration under Rule 12600.

**(n) Hearing Session**

The term "hearing session" means any meeting between the parties and arbitrator(s) of four hours or less, including a hearing or a prehearing conference.

**(o) Member**

For purposes of the Code, the term "member" means any broker or dealer admitted to membership in NASD, whether or not the membership has been terminated or cancelled; and any broker or dealer admitted to membership in a self-regulatory organization that, with NASD consent, has required its members to arbitrate pursuant to the Code and/or to be treated as members of NASD for purposes of the Code, whether or not the membership has been terminated or cancelled.

**(p) Non-Public Arbitrator**

The term "non-public arbitrator" means a person who is otherwise qualified to serve as an arbitrator and:

(1) is, or within the past five years, was:

(A) associated with, including registered through, a broker or a dealer (including a government securities broker or dealer or a municipal securities dealer);

(B) registered under the Commodity Exchange Act;

(C) a member of a commodities exchange or a registered futures association; or

(D) associated with a person or firm registered under the Commodity Exchange Act;

(2) is retired from, or spent a substantial part of a career engaging in, any of the business activities listed in paragraph (p)(1);

(3) is an attorney, accountant, or other professional who has devoted 20 percent or more of his or her professional work, in the last two years, to clients who are engaged in any of the business activities listed in paragraph (p)(1); or

(4) is an employee of a bank or other financial institution and effects transactions in securities, including government or municipal securities, and commodities futures or options or supervises or monitors the compliance with the securities and commodities laws of employees who engage in such activities.

For purposes of this rule, the term "professional work" shall not include mediation services performed by mediators who are also arbitrators, provided that the mediator acts in the capacity of a mediator and does not represent a party in the mediation.

**(q) Panel**

The term "panel" means the arbitration panel, whether it consists of one or more arbitrators.

**(r) Person Associated with a Member**

The term "person associated with a member" means:

(1) A natural person registered under the Rules of NASD; or

(2) A sole proprietor, partner, officer, director, or branch manager of a member, or a natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with NASD under the By-Laws or the Rules of NASD.

For purposes of the Code, a person formerly associated with a member is a person associated with a member.

**(s) Pleadings**

A pleading is a statement describing a party's causes of action or defenses. Documents that are considered pleadings are: a statement of claim, an answer, a counterclaim, a cross claim, a third party claim, and any replies.

**(t) Prehearing Conference**

The term "prehearing conference" means any hearing session, including an Initial Prehearing Conference, that takes place before the hearing on the merits begins.

**(u) Public Arbitrator**

The term "public arbitrator" means a person who is otherwise qualified to serve as an arbitrator and:

(1) is not engaged in the conduct or activities described in paragraphs (p)(1)–(4);

(2) was not engaged in the conduct or activities described in paragraphs (p)(1)–(4) for a total of 20 years or more;

(3) is not an investment adviser;

(4) is not an attorney, accountant, or other professional whose firm derived 10 percent or more of its annual revenue in the past two years from any persons or entities listed in paragraphs (p)(1)–(4);

(5) is not an attorney, accountant, or other professional whose firm derived $50,000 or more in annual revenue in the past two years from professional services rendered to any persons or entities listed in paragraph (p) (1) relating to any customer disputes concerning an investment account or transaction, including but not limited to, law firm fees, accounting firm fees, and consulting fees;

(6) is not employed by, and is not the spouse or an immediate family member of a person who is employed by, an entity that directly or indirectly controls, is controlled by, or is under common control with, any partnership, corporation, or other organization that is engaged in the securities business;

(7) is not a director or officer of, and is not the spouse or an immediate family member of a person who is a director or officer of, an entity that directly or indirectly controls, is controlled by, or is under common control with, any partnership, corporation, or other organization that is engaged in the securities business; and

(8) is not the spouse or an immediate family member of a person who is engaged in the conduct or activities described in paragraphs (p)(1)–(4). For purposes of this rule, the term immediate family member means:

(A) a person's parent, stepparent, child, or stepchild;

(B) a member of a person's household;

(C) an individual to whom a person provides financial support of more than 50 percent of his or her annual income; or

(D) a person who is claimed as a dependent for federal income tax purposes.

For purposes of this rule, the term "revenue" shall not include mediation fees received by mediators who are also arbitrators, provided that the mediator acts in the capacity of a mediator and does not represent a party in the mediation.

**(v) Respondent**

The term "respondent" means a party against whom a statement of claim or third party claim has been filed. A claimant against whom a counterclaim has been filed is not a respondent for purposes of the Code.

**(w) Statement of Claim**

The term "statement of claim" means the initial or amended claim filed by the party or parties initiating the arbitration.

**(x) Third Party Claim**

The term "third party claim" means a claim asserted against a party not already named in the statement of claim or any other previous pleading.

**(y) Uniform Submission Agreement**

The term "Uniform Submission Agreement" means the NASD Uniform Submission Agreement. The NASD Uniform Submission Agreement is a document that parties must sign at the outset of an arbitration in which they agree to submit

to arbitration under the Code.

---

Amended by SR-NASD-2007-021 eff. June 9, 2008.
Amended by SR-NASD-2007-038 eff. June 14, 2007.
Adopted by SR-NASD-2003-158 eff. April 16, 2007.

**Selected Notices to Member:** 07-07, 08-22

---

<< **Previous**                                                                 **Next**

©2008 FINRA. All rights reserved.

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| ROYAL ALLIANCE ASSOCIATES, INC., | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | ) Civil Action # 1:08cv449 (LMB/JFA) |
| | ) |
| BRANCH AVENUE PLAZA, L.P., | ) |
| | ) |
|     **Defendant.** | ) |
| _____ | ) |

## DEFENDANT'S PROPOSED ORDER

THIS MATTER comes on the Plaintiff's Motion for a Preliminary Injunction, the Defendant's Memorandum of Law and Response in Opposition to the Motion, the pleadings filed by the parties, the evidence presented at the hearing, and the argument of counsel, and it appearing to the Court that the Motion should be denied and the Plaintiff's Declaratory Judgment action should be consolidated with the Motion at the hearing and Plaintiff's request for a Declaratory Judgment should also be denied; therefore it is

    ORDERED that Plaintiff's Motion for a Preliminary Injunction is denied; and it is further

    ORDERED that the parties' dispute shall be referred to and resolved by FINRA arbitration pursuant to 9 U.S.C. § 3 and FINRA arbitration Rule 12200; and it is further

    ORDERED that the Plaintiff's Complaint for a Declaratory Judgment was consolidated with the Motion for a Preliminary Injunction at the Motion hearing pursuant to FRCP 65(a)(2) and the Declaratory Judgment requested by Plaintiff is denied and dismissed with prejudice.

ENTERED this _____ day of _____, 2008.


_____
Judge, United States District Court,
Eastern District of Virginia


I ASK FOR THIS:



_____
W. Scott Greco (VSB # 37341)
Counsel for Defendant Branch Avenue Plaza
GRECO & GRECO, P.C.
1300 Old Chain Bridge Road
McLean, Virginia 22101
Telephone (703) 821-2777

SEEN:



_____
Marianne Roach Casserly, Esquire
Counsel for Plaintiff Royal Alliance
ALSTON & BIRD
950 F Street NW
Washington, DC 20005
(202) 756-3470