UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |
|---|---|
| ROYAL ALLIANCE ASSOCIATES, INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:08-cv-449 (LMB/JFA) |
| BRANCH AVENUE PLAZA, L.P., | ) |
| Defendant. | ) |

**PLAINTIFF ROYAL ALLIANCE ASSOCIATES, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

**I.  Introduction.**

In its Memorandum of Law and Response in Opposition to Plaintiff's Motion for Preliminary Injunction ("Opposition Memorandum" or "Opp. Mem."), Defendant Branch Avenue Plaza[1] cannot, and does not, dispute the following essential and dispositive facts:

- The subject alleged misrepresentations occurred before the asset purchase transaction between Royal Alliance and United Securities;

- There is no express arbitration agreement between Royal Alliance and Branch Avenue Plaza;

- There is no customer or contractual relationship between Branch Avenue Plaza, William Allen, or Glaucia Allen, on the one hand, and Royal Alliance, on the other hand;

- Ackerman has never been a Royal Alliance registered representative;

---

[1] All proper nouns used in this Memorandum, unless they are otherwise specifically defined herein, have the same meaning as that referenced in Plaintiff Royal Alliance Associates, Inc.'s Motion For Preliminary Injunction and in its Memorandum Of Law In Support Of Its Motion For Preliminary Injunction ("Opening Memorandum" or "Opening Mem.").

- United Securities remains an active, independently owned and operated investment advisory firm;

- The express language of the Transfer Agreement excludes the assumption of any United Securities liabilities or obligations by Royal Alliance;

- There has never been any common direct or indirect ownership between Royal Alliance and United Securities;

- Royal Alliance did not itself engage in any misconduct; and

- The Arbitration is proceeding unimpeded.

Nevertheless, Branch Avenue Plaza advocates that Royal Alliance should be forced to resolve Branch Avenue Plaza's claims in an arbitration forum. Such a result would be antithetical to the fundamental principle repeatedly reaffirmed by the Supreme Court of the United States: that a party cannot be compelled to arbitrate a dispute absent its agreement to do so. *See, e.g., AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960).

To avoid such a result, to protect the status quo, and to prevent substantial and irreparable prejudice to Royal Alliance's legal rights, Royal Alliance's Motion for Preliminary Injunction should be granted. The balance of harms weighs in Royal Alliance's favor, Royal Alliance is very likely to succeed on the merits, and injunctive relief would support the public interest. Branch Avenue Plaza and all its agents should be prohibited from continuing to prosecute their claims against Royal Alliance or from taking any further action with respect to the Arbitration until the present declaratory judgment action is resolved.

II.     Argument.

   A.   The Authority To Decide Arbitrability Resides Squarely With This Court, And Not With The Arbitration Panel.

The Supreme Court of the United States has irrefutably established the principle that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).[2]  Branch Avenue Plaza argues that NASD Rule 12413 "clearly and unmistakably" provides that arbitrators must decide the issue of arbitrability, thereby circumventing the Supreme Court's unequivocal pronouncement.  (Opp. Mem. at 7.)

This argument is entirely misplaced because it is based on a false premise.  A FINRA arbitration panel does not obtain authority "to interpret and determine the applicability of all provisions under the Code[,]" *see* NASD Rule 12413, unless and until the parties agree to submit their controversy to an arbitration proceeding under NASD rules.  The entire thrust of this declaratory judgment action is that Royal Alliance has never agreed, and cannot be compelled, to arbitrate any purported claims against it by Branch Avenue Plaza.  Pursuant to the Supreme Court's directive, this Court must decide the threshold question of whether there is a valid and enforceable arbitration agreement between Branch Avenue Plaza and Royal Alliance.

---

[2] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), is distinguishable because, there, the Court was resolving the limited issue of whether "the application of the NASD time limit provision" fell into the scope of "the parties clearly and unmistakably providing otherwise" regarding the decision making authority on arbitrability.  537 U.S. at 83.  This time limit provision is not at issue in this case.

B.  **Branch Avenue Plaza Is Not And Has Never Been A "Customer" Of Royal Alliance And, Thus, Cannot Resort To NASD Rule 12200 To Compel Royal Alliance To Arbitration.**

Branch Avenue Plaza makes the preposterous argument that NASD Rule 12200 obligates Royal Alliance to arbitrate Branch Avenue Plaza's claims, even though Branch Avenue Plaza is not, and never has been, a customer of Royal Alliance. (Opp. Mem. at 10.) To support its distorted interpretation, Branch Avenue Plaza reads Rule 12200 to mandate arbitration between any FINRA member and any customer, even if the investor is a customer of another wholly unrelated member and is not a customer of the member being subject to arbitration. (*Id.* at 9-10.) Such a farfetched reading of the provision is not sustainable.

In advancing its argument, Branch Avenue Plaza cites no evidence to support its position of a substantive change between former NASD Rule 10301, under which *Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 821 (11th Cir. 1993), and its progeny were decided, and current Rule 12200. Like Rule 12200, former NASD Rule 10301 also did not expressly state that the customer at issue had to be a customer of the member against whom arbitration was sought in order for arbitration to be obligatory. It provided as follows:

> Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer.

Former NASD Rule 10301. Courts consistently interpreted this provision to preclude mandatory arbitration under facts such as those at hand. (Opening Mem. at 17-20.) Because Branch Avenue Plaza can point to no relevant change in language between

former Rule 10301 and current rule 12200, the *Wheat, First* line of cases are clearly applicable and decisive.

Branch Avenue Plaza also cites no case presenting facts parallel to those at hand, in which a person who was a customer of a member firm compelled arbitration against another member firm on the sole premise that being a customer of any member firm sufficed for purposes of NASD's mandatory arbitration rules. Such a reading of NASD Rule 12200 would subject all FINRA members to mandatory arbitration by all customers of all other FINRA members, which would effectively be the entire universe of investors. Such an unlimited obligation finds no grounding in the law governing the arbitrability issue or the NASD Rules.

Moreover, Branch Avenue Plaza cannot resort to NASD Rule 12200 to compel Royal Alliance to arbitration because the dispute at hand does not arise "in connection with the business activities of" Royal Alliance, as required by NASD Rule 12200. It is undisputed that:

(i) Royal Alliance had no connection whatsoever with the transaction that gives rise to Branch Avenue Plaza's purported claims, and Royal Alliance committed no wrongful act, omission, or breach of duty in connection with that transaction;

(ii) The alleged misconduct at issue took place more than two years before Royal Alliance acquired any of United Securities' assets;

(iii) Ackerman was never registered with Royal Alliance; and

(iv) Branch Avenue Plaza was never a customer of Royal Alliance.

Finally, the Fourth Circuit decision in *Washington Square Securities, Inc. v. Aune*, 385 F.3d 432 (4th Cir. 2004), is inapposite for several reasons. First, that case merely holds that a member firm is obligated by the NASD rules to arbitrate the claims of a person who purchased a security from that member's registered representative while the registered representative was registered with the firm. 385 F.3d at 440. Second, that Court's perception of the NASD "customer" language as ambiguous or not is inapplicable here. Notably, the decision before the *Aune* court was whether the plaintiff was a customer of the member or a customer of the associated person. Here, Branch Avenue Plaza is neither. *Id.* at 435-36. Third, unlike the facts in that case, Royal Alliance never had a duty to supervise Ackerman. *Id.* at 433.

Thus, there is no applicable NASD/FINRA provision mandating arbitration of Branch Avenue Plaza's claims against Royal Alliance.

    **C.**    **Royal Alliance Is Not A Successor In Interest To United Securities.**

        **1.**    **Branch Avenue Plaza Relies on Inadmissible Evidence To Support Its Argument.**

In the face of all the concrete evidence Royal Alliance has submitted to demonstrate that the transaction, indeed, was not a merger, either as a matter of fact or as a matter of law, Branch Avenue Plaza has to resort to two news articles to support its position. (Opp. Mem. at 3.) Such out-of-court statements presented to prove the truth of the matter asserted are inadmissible hearsay. *See* Fed. R. Evid. 801(c), 802. These articles are particularly untrustworthy and unreliable because they constitute superficial commentaries by reporters who were strangers to the transaction.

## 2. Virginia And Colorado Case Law On Successor Liability Are Consistent With That Of New York.

Royal Alliance maintains that the New York law of successor liability applies to this case by virtue of the asset purchase agreement's choice-of-law provision. In response, Branch Avenue Plaza asserts that the asset purchase transaction constituted a consolidation or a "*de facto* merger" under Virginia and/or Colorado law. (Opp. Mem. at 3.) Even assuming *arguendo* that the law of Virginia or Colorado governed the issues presented by the instant action, the laws of both of those states are materially similar to those of New York, leading to the same result, i.e., that there is no successor liability.

Like New York, Virginia law adheres to the traditional rule that the purchaser in an asset purchase transaction becomes legally responsible for only those liabilities that it explicitly assumes. Like most other states, imposition of successor liability in the context of an asset purchase transaction under Virginia law is an exception to this rule.

> In order to hold a purchasing corporation liable for the obligation of the selling corporation [in the context of an asset purchase transaction], it must appear that (1) the purchasing corporation expressly or impliedly agreed to assume such liabilities, (2) the circumstances surrounding the transaction warrant a finding that there was a consolidation or *de facto* merger of the two corporations, (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is fraudulent in fact.

*Bono v. W.M. Foley Constr. Corp.*, No. 40034, 2005 WL 4154089, at *1 (Va. Cir. Ct. Mar. 1, 2005); *see also Harris v. T.I., Inc.*, 413 S.E.2d 605, 609 (Va. 1992); *Bud Antle, Inc. v. E. Foods, Inc.*, 758 F.2d 1451, 1456 (11th Cir. 1985); *Kemos, Inc. v. Bader*, 545 F.2d 913, 915 (5th Cir. 1977). The determination that an asset purchase transaction resulted in a *de facto* merger depends on the presence of the following factors: "(1) continuity of enterprise; (2) continuity of shareholders; (3) cessation of operations by

seller; and (4) assumption of the obligations necessary to uninterrupted continuation of normal business operations by the seller." *Augusta Lumber Co. v. Broad Run Holdings, LLC*, No. 2006-3341, 2006 WL 2578632, at *2 (Va. Cir. Ct. Aug. 2, 2006). The "mere continuation" exception similarly looks to factors such as whether adequate consideration was paid, whether there is common identity of ownership, officers, and directors in the seller and purchaser, and whether there is continuity of business and of control. *Beck v. Va. Sash & Door, Inc.*, No. LL-1404, 2001 WL 1486159, at *3-*4 (Va. Cir. Ct. Nov. 8, 2001). Additional factors can include whether the buyer presented itself to the market as the ongoing concern of its predecessor, whether the buyer maintained the same employees and customers, and whether the seller closed down its "ordinary business operation." *Harris*, 413 S.E.2d at 609.

The basic principles of Colorado law on successor liability following asset purchase transactions are substantively similar. The core rule is stated as follows:

> Generally, a corporation that acquires the assets of another corporation does not become liable for the debts of the selling corporation. However, successor corporations have been held liable if: (1) there is an express or implied assumption of liability; (2) the transaction results in a merger or consolidation of the two corporations; (3) the purchaser is a mere continuation of the seller; or (4) the transfer is for the fraudulent purpose of escaping liability.

*CMCB Enters., Inc. v. Ferguson*, 114 P.3d 90, 93 (Colo. Ct. App. 2005); *see also Alcan Aluminum Corp. v. Elec. Metal Prods., Inc.*, 837 P.2d 282, 283 (Colo. Ct. App. 1992); *Johnston v. Amsted Indus., Inc.*, 830 P.2d 1141, 1142-43 (Colo. Ct. App. 1992); *Ruiz v. ExCello Corp.*, 653 P.2d 415, 416 (Colo. Ct. App. 1982). The mere continuation exception is triggered in circumstances where there is a continuance of directors, management, and shareholder interest, and, at times, where there is inadequate

consideration. *CMCB Enters., Inc.*, 114 P.3d at 93; *Alcan Aluminum Corp.*, 837 P.2d at 283.

It is clear from the undisputed record now before the Court that none of the factors necessary under New York, Virginia, or Colorado law to find a *de facto* merger between Royal Alliance and United Securities are present. The mere fact that Royal Alliance and United Securities may store their books and records at the same locations or that United Securities may consider Royal Alliance an "affiliate" for purposes of the Investment Advisers Act does not make Royal Alliance a successor-in-interest to United Securities. (Opp. Mem. at 5.) In the same Form ADV, United Securities itself admits and discloses that its direct and indirect owners and direct and indirect control persons do not include Royal Alliance, or any owner, director, or officer of Royal Alliance. *See* Form ADV, attached as Exhibit A to Sawicki Dec., filed on June 4, 2008, at D-16, D-22 to D-25, D-34 to D-35.

More importantly, Royal Alliance has never expressly or implicitly assumed any liabilities or obligations of United Securities. United Securities continues to operate post-transaction as an investment advisory firm independent from Royal Alliance, and there has not been a consolidation of the two entities. There also was and is no commonality of ownership between Royal Alliance and United Securities either pre-transaction or post-transaction. And none of the directors, officers, and employees of United Securities became directors, officers, or employees of Royal Alliance, or vice versa.

### D. The Relevant NASD/FINRA Rules Neither Mandate Arbitration Nor Require That The Requested Injunctive Relief Be Denied.

#### 1. NASD Rules 1014 And 2110 And NASD Notice To Members 04-10.

Branch Avenue Plaza maintains that NASD Rules 1014 and 2110 and NASD Notice to Members 04-10 preclude Royal Alliance from challenging the arbitrability of Branch Avenue Plaza's claims against it. (Opp. Mem. at 4-5.) These arguments are entirely unavailing.

NASD Rule 2110 is not directly applicable to the current context. That Rule provides, "A member, in the conduct of its business, shall observe high standards of commercial honor and just and equitable principles of trade." NASD Rule 2110. The rule expressly and by context relates to a member's service performance to its own customers. Therefore, it has no relevance to the current case, in which, by contrast, Branch Avenue Plaza never was nor is a customer of Royal Alliance and Royal Alliance has never performed investment advisory or broker-dealer services for Branch Avenue Plaza. *See* Tambaro Dec., filed on June 4, 2008, at ¶ 10.

Likewise, NASD Notice to Members 04-10 is irrelevant. First, it applies only to arbitration claims that are pending at the time of the asset transfer. The Notice allows NASD to consider "pending arbitration claims and civil actions against the applicant and its associated persons, as well as unpaid arbitration awards and other adjudicated customer awards against the applicant or other persons that may have significant control or influence over the applicant . . . ." NASD Notice to Members 04-10 at 96, available at http://finra.complinet.com/file_store/pdf/rulebooks/0410ntm.pdf; *see also* NASD Rule 1014(a)(3)(B) (the standards for admission include whether the "Applicant's or

Associated Person's record reflects a . . . pending arbitration, or a pending private civil action . . . ."). At the time of Royal Alliance's transaction with United Securities in March 2007, Branch Avenue Plaza's claims were not pending, and there was no unpaid arbitration award due to Branch Avenue Plaza. Therefore, the asset purchase transaction does not contravene NASD Rules 1014 or 2110 or the related Notice.

In addition, the importance of the express language in the Notice is reinforced by the fact that the asset purchase transaction between Royal Alliance and United Securities closed without objection from NASD. There is no evidence that NASD required any different or additional protection for United Securities' customers, beyond what was already provided in the Transfer Agreement, i.e., an errors and omissions tail insurance policy to be paid for by United Securities to cover any claims emanating from United Securities' pre-transaction conduct. There is no evidence that Royal Alliance was obligated by NASD to assume any liabilities of United Securities in order to obtain NASD's approval of the transaction.

### III. Conclusion.

For all of the reasons set forth herein, Royal Alliance's Motion for Preliminary Injunction should be granted.

Respectfully submitted, this 18th day of June, 2008.

/s/
Marianne Roach Casserly
Virginia Bar No. 45254
ATTORNEY FOR PLAINTIFF
Royal Alliance Associates, Inc.

ALSTON & BIRD LLP
950 F Street NW
Washington, DC, 20005
Phone: (202) 756-3379

Facsimile: (202) 756-3333
marianne.casserly@alston.com

Theodore J. Sawicki
Ambreen A. Delawalla
*Admitted Pro Hac Vice*
ATTORNEYS FOR PLAINTIFF
Royal Alliance Associates, Inc.

ALSTON & BIRD LLP
1201 W. Peachtree St.
Atlanta, GA 30309
Phone: (404) 881-7000
Facsimile: (404) 881-7777
tod.sawicki@alston.com
ambreen.delawalla@alston.com

# CERTIFICATE OF SERVICE

The undersigned does hereby certify that the within and foregoing has this day been served by overnight mail upon the following counsel of record:

W. Scott Greco
Greco & Greco, P.C.
1300 Old Chain Bridge Road
McLean, Virginia 22101

This 18th day of June, 2008.

                                        /s/
                             Marianne Roach Casserly
                             Virginia Bar No. 45254
                             ATTORNEY FOR PLAINTIFF
                             Royal Alliance Associates, Inc.

ALSTON & BIRD LLP
950 F Street NW
Washington, DC, 20005
Phone: (202) 756-3379
Facsimile: (202) 756-3333
marianne.casserly@alston.com